**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| HILDAWN DESIGN, LLC, | ) | CASE NO. 5:25-cv-1247 |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| PLAINTIFF, | ) | CHIEF JUDGE SARA LIOI |
| | ) | |
| | ) | |
| vs. | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| | ) | |
| RIGHT HERE AT HOME, | ) | |
| | ) | |
| | ) | |
| | ) | |
| DEFENDANT. | ) | |

Before the Court is a motion for default judgment filed by plaintiff Hildawn Design, LLC ("Hildawn") against defendant Right Here at Home, LLC ("RHH"), for claims alleging infringement of Hildawn's registered trademarks in violation of the Lanham Act and Ohio statutory and common law. (Doc. No. 21 (Motion for Default Judgment).) The allegations in Hildawn's operative Amended Complaint (Doc. No. 11) sufficiently state claims for Counts I–III and V–VI, but not for Count IV. For the reasons stated herein, the motion is **GRANTED in part** and **DENIED in part**.

## I.    BACKGROUND

Plaintiff Hildawn Design, LLC is an Ohio limited liability company with a principal place of business in Clinton, Ohio. (Doc. No. 11 ¶ 1.) Hildawn filed a complaint on June 13, 2025 (Doc. No. 1 (Complaint)), against defendant Right Here at Home, LLC, a New Jersey limited liability company with a principal place of business in Centreville, Maryland. (Doc. No. 11 ¶ 2.) Then, on

November 4, 2025, Hildawn filed an amended complaint, which is the current operative complaint in this suit. (*See generally* Doc. No. 11.) The amended complaint was served via email to RHH with its consent on November 4, 2025. (Doc. No. 15 (Affidavit of Service of Amended Complaint).) RHH failed to respond by the deadline. Hildawn obtained entry of default (*see* Doc. Nos. 19 (Application for Entry of Default); 20 (Entry of Default)) and now moves for default judgment on all claims asserted against RHH in the amended complaint. (Doc. No. 21.)

Once default has been entered against a defendant, that party is deemed to have admitted all the well-pleaded allegations in the operative complaint, except those relating to damages. *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 110–11 (6th Cir. 1995). The allegations in Hildawn's amended complaint, which RHH is now deemed to have admitted follow.

Hildawn is in the business of "designing, marketing, creating, and distributing clothing apparel and hats throughout the United States." (Doc. No. 11 ¶ 9.) Among the apparel it produces, Hildawn makes and sells articles of clothing under four brand names now at issue in the litigation: GIRLDAD, GIRLMOM, BOYDAD, and BOYMOM. (*Id.* ¶ 11.) Hildawn owns the trademarks for each of these brand names, which have all been registered with the U.S. Patent and Trademark Office. (*Id.*) "GIRLDAD" is registered under Trademark Registration No. 5,192,792. (Doc. No. 11-1 (Certificate of Registration for GIRLDAD Trademark).) "GIRLMOM" is registered under Trademark Registration No. 3,644,619. (Doc. No. 11-2 (Certificate of Registration for GIRLMOM Trademark).) "BOYDAD" is registered under Trademark Registration No. 5,397,597. (Doc. No. 11-3 (Certificate of Registration for BOYDAD Trademark).) Finally, "BOYMOM" is registered under Trademark Registration No. 3,347,486. (Doc. No. 11-4 (Certificate of Registration for BOYMOM Trademark).)

Hildawn has used each of these trademarks extensively and continuously for over ten years. (Doc. No. 11 ¶¶ 17–20.) Its trademarks appear on apparel and hats Hildawn sells, with the marks "consistently accompanied by the letter R enclosed with a circle ® to designate their registered trademark status." (*Id.* ¶ 21.) Hildawn sells branded apparel clearly bearing these marks on online shopping platforms such as its website, Etsy.com, and Amazon.com. (*Id.* ¶ 22.) Hildawn also advertises its products bearing these trademarks on Twitter, Instagram, Facebook, and through social media posts made by influencers using promotional goods provided by Hildawn. (*Id.*)

As alleged in the amended complaint and admitted to, "Defendant [RHH] has manufactured, advertised, and sold merchandise identified with the GIRLDAD®, GIRLMOM®, BOYDAD®, and BOYMOM® marks which are confusingly similar to [Hildawn]'s trademark." (*Id.* ¶ 23; *see also* Doc. Nos. 11-5 (Exhibit 5); 11-6 (Exhibit 6); 11-7 (Exhibit 7); 11-8 (Exhibit 8).) Upon discovery of RHH's merchandise, Hildawn put RHH on notice that it was infringing on Hildawn's trademarks. (*Id.* ¶ 24.) RHH nonetheless "continued to sell merchandise identified with the . . . marks[.]" (*Id.*)

Hildawn asserts that RHH's sale of its merchandise with marks similar to Hildawn's trademarks is inducing persons to buy, use, and recommend RHH's products when they instead intend to purchase Hildawn's nearly identically branded products. (*See id.* ¶ 25.) Moreover, RHH is "unfairly trading on and appropriating the reputation and goodwill" of Hildawn and its trademark. (*Id.* ¶ 26.) This deception "will cause great damage to [Hildawn] and erode the goodwill that [it] has developed" with its customers. (*Id.* ¶ 25.)

RHH continued to use branding very similar to Hildawn's trademarks "despite prominent notices of the registered trademarks." (*Id.* ¶ 28.) RHH "refused to cease and desist in its infringing

activities" despite being put on notice, thus acting "with either actual knowledge or with reckless disregard that its actions constituted trademark infringement[.]" (*Id.*)

Hildawn brings six causes of action against RHH: (1) trademark infringement under the Lanham Act, 15 U.S.C. § 1114 (*id.* ¶¶ 29–39); (2) unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125 (*id.* ¶¶ 40–45); (3) trademark infringement under Ohio Rev. Code § 1329.66 and Ohio common law (*id.* ¶¶ 46–56); (4) acts of unfair competition in violation of Ohio Rev. Code § 1345.02 (*id.* ¶¶ 57–62); (5) false designation of origin in violation of the Lanham Act, 15 U.S.C. § 1125(a) (*id.* ¶¶ 63–68); and (6) deceptive trade practices in violation of Ohio Rev. Code § 4165.02 (*id.* ¶¶ 69–73). Hildawn requests relief in the form of a permanent injunction against RHH, compensatory damages, disgorgement of profits, and an award of damages along with costs and attorney's fees pursuant to 15 U.S.C. § 1117. (*Id.* at 11–12; Doc. No. 21, at 2.)[1]

## II.    ANALYSIS

### A.  Jurisdiction

Before the Court can rule on Hildawn's motion for default judgment, it must first examine whether it has both subject matter jurisdiction over the claims and personal jurisdiction over the defendant. *Buxton v. Hartin Asset Mgmt., LLC*, No. 1:22-cv-600, 2023 WL 4861724, at *4 (W.D. Mich. July 31, 2023) (citing *United States v. Kuglin*, No. 11-2741, 2013 WL 870377, at *1 (W.D. Tenn. Mar. 7, 2013)). This threshold question is critical because the Court is powerless to proceed to adjudication if it lacks jurisdiction. *See Days Inn Worldwide, Inc. v. Patel*, 445 F.3d 899, 903 (6th Cir. 2006).

---

[1] All page number references herein are to the consecutive page numbers applied to each individual document by the Court's electronic filing system.

### 1. Subject Matter Jurisdiction Exists

The Court finds that it has subject matter jurisdiction over Hildawn's claims. There is original jurisdiction over the claims brought under the Lanham Act pursuant to 28 U.S.C. §§ 1331, 1338(a)–(b), and 15 U.S.C. § 1121. The Court may exercise supplemental jurisdiction over each of the state law claims, which arise from RHH's use of marks infringing on Hildawn's trademark rights and thus share "a common nucleus of operative facts" with the Lanham Act claims. *Carhartt, Inc. v. Costa Del Mar, Inc.*, No. 21-11844, 2022 WL 3701961, at *3 (E.D. Mich. Aug. 26, 2022) (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1996)).

### 2. Personal Jurisdiction Exists

The Court also finds that it has personal jurisdiction over RHH. Although RHH failed to respond to the amended complaint, that failure does not excuse the Court from its obligation to consider personal jurisdiction before entering default judgment. *See Buxton*, 2023 WL 4861724, at *4 (citing *Gerber v. Riordan*, 649 F.3d 514, 520 (6th Cir. 2011)) (further citation omitted). The Court must exercise its "affirmative duty to look into its jurisdiction" and must "satisfy itself that the Complaint states a *prima facie* case for personal jurisdiction[.]" *Hartman v. Lowry*, No. 4:20-cv-2752, 2021 WL 1246864, at *8 (N.D. Ohio Mar. 26, 2021) (citations omitted).

Hildawn, as the plaintiff, bears the burden of establishing that personal jurisdiction exists over RHH. *See Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002) (citation omitted). Where, as here, a district court is relying on only written submissions to analyze jurisdiction, the plaintiff's "burden consists of a *prima facie* showing that personal jurisdiction exists." *See Schneider v. Hardesty*, 669 F.3d 693, 697 (6th Cir. 2012) (internal quotation marks

and citation omitted). A *prima facie* showing is made by "establishing with reasonable particularity sufficient contacts between [the defendant] and the forum state to support jurisdiction." *Hartman*, 2021 WL 1246864, at *2 (quoting *Neogen Corp*, 282 F.3d at 887).

"Where a federal court's subject matter jurisdiction over a case stems from the existence of a federal question, personal jurisdiction over a defendant exists 'if the defendant is amenable to service of process under the [forum] state's long-arm statute and if the exercise of personal jurisdiction would not deny the defendant[] due process.'" *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002) (quoting *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 954 F.2d 1174, 1176 (6th Cir. 1992)). Under Ohio's long-arm statute, a court may exercise personal jurisdiction if the defendant's conduct falls within any of nine specified bases for jurisdiction, *see* Ohio Rev. Code § 2307.382(A), or otherwise "on any basis consistent with the Ohio Constitution and United States Constitution." Ohio Rev. Code § 2307.382(C) (eff. Apr. 7, 2021).[2]

Personal jurisdiction can be general. But here, the pleadings clearly show there is no general jurisdiction. That form of jurisdiction would require a *prima facie* showing that RHH's contacts in the forum state are "so continuous and systematic as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919, 131 S.

---

[2] Ohio state courts have declined to definitively resolve the question of whether § 2307.382(C) extends the state's jurisdiction to the limits of federal law. *See Angel's Dream, LLC v. Toledo Jet Center, LLC*, 721 F. Supp. 3d 601, 609 (N.D. Ohio 2024) (collecting cases). But most federal courts agree that "Ohio['s] long-arm statute extend[s] to the limits of federal due process[.]" *Id.* at 610 (citing *Int'l Shoe Co. v. State of Wash.*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945)); *AmaTech Grp. Ltd. v. Fed. Card Servs. LLC*, No. 1:21-cv-406, 2022 WL 44674, at *5 (S.D. Ohio Jan. 5, 2022) ("Most of the courts to address the amended language have concluded that Ohio's long-arm statute now extends personal jurisdiction to the fullest extent that the U.S. Constitution permits.") (collecting cases); *Bren Ins. Servs., Inc. v. Envision Pharm. Servs., LLC*, No. 5:20-cv-1802, 2022 WL 5160746, at *4 (N.D. Ohio Oct. 5, 2022) ("Ohio's long-arm statute allows the exercise of personal jurisdiction to the full extent permissible under the U.S. Constitution[.]"); *but see Premier Prop. Sales Ltd. v. Gospel Ministries Int'l, Inc.*, 539 F. Supp. 3d 822, 827 n.2 (S.D. Ohio 2021) (holding that Ohio's long-arm statute is coextensive with federal due process only for *general* jurisdiction but is more restrictive for *specific* jurisdiction).

Ct. 2846, 180 L. Ed. 2d 796 (2011). As a limited liability company, RHH is "at home" in the state where it is organized and where it has its principal place of business. *Butler v. Adient US, LLC*, No. 3:20-cv-2365, 2021 WL 2856592, at *1 (N.D. Ohio July 8, 2021); *Daimler AG v. Bauman*, 571 U.S. 117, 137–38, 134 S. Ct. 746, 187 L. Ed. 2d 624 (2014). Here, Hildawn alleges that RHH "is a New Jersey limited liability company with its principal place of business located in Centreville, Maryland." (Doc. No. 11 ¶ 2.) RHH is at home in New Jersey and Maryland, but not in Ohio.

Personal jurisdiction can also be specific to a claim. Hildawn makes a clear *prima facie* showing of specific jurisdiction. RHH established minimum contacts in Ohio via website sales and procurement of business in this state in connection with its infringing use of Hildawn's trademark. Exercising jurisdiction on this basis would comport with the due process requirements of the Fourteenth Amendment.

Due process requires that a defendant have "minimum contacts" with the forum state and that the exercise of personal jurisdiction be "consistent with traditional notions of fair play and substantial justice." *Marrick Dish Co., LLC v. Wilkinson CGR Cahaba Lakes, LLC*, 835 F. Supp. 2d 449, 455 (N.D. Ohio 2011) (citing *Int'l Shoe Co. v. State of Wash.*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945)). In addition, the question of due process in the context of specific jurisdiction turns on whether "the defendant's conduct and connection with the forum State are such that [the defendant] should reasonably anticipate being haled into court there." *World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 297, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980) (citations omitted).

The Sixth Circuit has formulated a three-part test for determining whether the exercise of specific personal jurisdiction satisfies due process:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968).

RHH has met the first step. "A defendant purposefully avails itself of the privilege of acting in a state through its website if the website is interactive to a degree that reveals specifically intended interaction with residents of the state." *Neogen*, 282 F.3d at 890 (citing *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)).

Here, Hildawn alleges—and RHH admits by virtue of defaulting—that RHH uses a website to advertise and sell merchandise bearing a mark strikingly similar to Hildawn's trademarks. (Doc. No. 11 ¶ 23.) As but one example, Hildawn submits a screenshot of RHH's website offering for sale a teal t-shirt with the text "Boy Dad" and with the description "SAMPLE Boy Dad Shirt $25.00[.]" (Doc. No. 11-7, at 2.) Hildawn's exhibits collectively show that any consumer can log on and order infringing merchandise to be delivered to them directly. (*See* Docs. No. 11-5; 11-6; 11-7; 11-8.) RHH further admits to having "solicited and conducted business within the State of Ohio" and engaging in "commercial activities . . . directed at Ohio residents[.]" (Doc. No. 11 ¶ 6.) This "proffered evidence that [defendant] regularly chooses to do business with Ohio residents is sufficient to constitute purposeful availment." *Bird*, 289 F.3d at 874–75 (holding that defendant's use of website to accept business of 4,666 Ohio residents satisfied purposeful availment requirement) (citation omitted).

As to the second step, the causes of action clearly arise from RHH's forum-related actions. All of Hildawn's causes of action relate to, and seek relief for, RHH's advertising and sale of products bearing Hildawn's trademarks. RHH solicited the business of Ohio residents in attempting to procure sales of products infringing upon an Ohio LLC's trademark rights. The Court finds that this controversy sufficiently arises from RHH's activities in and directed at Ohio. *See Audi AG & Volkswagon of Am., Inc. v. D'Amato*, 341 F. Supp. 2d 734, 748 (E.D. Mich. 2004) (finding that trademark and related causes of action arose from defendant's use of infringing marks in online business activities targeted at forum state consumers).

And finally, "[w]here the first two elements of the test for personal jurisdiction are met, there is an inference that the exercise of jurisdiction is reasonable." *Id.* (citations omitted). Jurisdiction is reasonable here because RHH's intentional commercial acts directed at Ohio residents are such that it should expect being haled to court here. *See Woodson*, 444 U.S. at 297. Moreover, jurisdiction is reasonable because "Ohio has a legitimate interest in protecting the business interests of its citizens," and that includes the protection of Hildawn's trademark rights. *See Bird*, 289 F.3d at 875.

In addition to comporting with due process, jurisdiction comports with the broad scope of Ohio's long-arm statute relating to the "[t]ransacting [of] any business in [the State of Ohio][.]" Ohio Rev. Code § 2307.382(A)(1). This clause has been interpreted as "very broadly worded" and a basis for jurisdiction "over nonresident defendants who are *transacting any* business in Ohio." *Ky. Oak Mall Co. v. Mitchell's Formal Wear, Inc.*, 559 N.E.2d 477, 480 (Ohio 1990) (emphasis in original). The clause encompasses the prosecution of business negotiations, the carrying on of business, and the engagement of business dealings. *Id.* "Where a defendant has purposefully

9

shipped the accused product into the forum state through an established distribution channel . . . no more is usually required to establish jurisdiction." *State ex. rel. Atty. Gen. v. Grand Tobacco*, 871 N.E.2d 1255, 1262 (Ohio Ct. App. 2007) (citation modified). And "a single online sale suffices to establish personal jurisdiction under Ohio's long-arm statute." *NOCO Co. v. Shenzhen Valuelink E-Commerce Co., Ltd.*, 550 F. Supp. 3d 488, 494 (N.D. Ohio 2021) (citing *Zoya Co. v. NIOS, Inc.*, No. 1:13-cv-780, 2013 WL 4511922, *2–3 (N.D. Ohio Aug. 23, 2013)). RHH admits to directing online sales of its merchandise to Ohio consumers. That intentional conduct subjects it to personal jurisdiction under Ohio's long-arm statute.

Specific jurisdiction over RHH comports with due process and neatly comports with Ohio's long-arm statute. The Court has personal jurisdiction to adjudicate the claims in the amended complaint against RHH.

### B.  Liability in a Default Judgment

The Court now turns to determining whether, given the pleadings in the amended complaint, RHH can be held liable for each of the six causes of action brought against it. Federal Rule of Civil Procedure 55 governs default judgments. When the clerk has entered default, the Court may enter default judgment against a defendant upon a plaintiff's motion with or without a hearing. Fed R. Civ. P. 55(b). Although the defendant has admitted to all factual allegations in the amended complaint except those relating to damages, *see Antoine*, 66 F.3d at 110–11, the Court must still determine whether those facts are sufficient to state a claim for relief with respect to each of the plaintiff's pleaded claims. *J & J Sports Prods., Inc. v. Rodriguez*, No. 1:18-cv-1350, 2008 WL 5083149, at *1 (N.D. Ohio Nov. 25, 2008) (citation omitted). With that stated, the Court turns to each of Hildawn's claims, listed in the order they appear in the amended complaint.

*1. Trademark Infringement Under 15 U.S.C. § 1114 (Count I)*

Hildawn's first claim asserts that RHH's production of clothing apparel bearing the GIRLDAD, GIRLMOM, BOYDAD, and BOYMOM trademarks owned by Hildawn constitutes trademark infringement in violation of 15 U.S.C. § 1114. (Doc. No. 11 ¶¶ 29–33.)

Trademark infringement occurs if a defendant, "acting without the permission of a trademark's owner, 'use[s] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive[.]'" *Bird*, 289 F.3d at 877 (citing 15 U.S.C. § 1114(1)(a)). The elements of trademark infringement under 15 U.S.C. § 1114 require a plaintiff to show that: (1) it owns a valid trademark; (2) defendant used the trademark "in commerce" without plaintiff's authorization; (3) defendant used plaintiff's trademark, or an imitation thereof, "in connection with the sale, offering for sale, distribution, or advertising" of goods and services; and (4) defendant's use of plaintiff's trademark is likely to cause consumer confusion. *The Ohio State Univ. v. Skreened Ltd.*, 16 F. Supp. 3d 905, 910 (S.D. Ohio 2014) (citing 15 U.S.C. § 1114). "The touchstone of liability under § 1114 is whether the defendant's use of the disputed mark is likely to cause confusion among consumers regarding the origin of the goods offered by the parties." *Daddy's Junky Music Stores, Inc. v. Big Daddy's Fam. Music Ctr.*, 109 F.3d 275, 280 (6th Cir. 1997) (citations omitted).

Based on RHH's admissions, Hildawn has proven each element of its trademark infringement claim. Hildawn owns valid trademarks at issue here. (Doc. No. 11 ¶ 11; *see* Doc. Nos. 11-1; 11-2; 11-3; 11-4.) RHH has violated the Lanham Act by advertising, distributing,

offering for sale, and selling products in commerce that bear marks indistinguishable from Hildawn's trademarks, and doing so without Hildawn's permission. (Doc. No. 11 ¶¶ 30–33; *see* Doc. Nos. 11-5; 11-6; 11-7; 11-8.) Moreover, that infringement was willful because Hildawn "put [RHH] on notice of [it]'s trademark infringement and likelihood of confusion" (Doc. No. 11 ¶ 24), but RHH nonetheless continued its business activities. *See Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 852 (E.D. Mich. 2006) ("An infringement is willful . . . if the defendant had knowledge that its actions constitute an infringement." (citation modified)). RHH further admits the marks it used are likely to cause consumer confusion between RHH's products and Hildawn's own trademarks. (Doc. No. 11 ¶¶ 23–24.) Indeed, the infringing marks are practically identical to Hildawn's registered marks, and the Court thus concludes there is a high likelihood of confusion.

RHH has willfully infringed the following trademarks: Reg. Nos. 5,192,792 ("GIRLDAD"), 3,644,619 ("GIRLMOM"), 5,397,597 ("BOYDAD"), and 3,347,486 ("BOYMOM"). The Court therefore holds that Hildawn is entitled to default judgement with respect to its Lanham Act claim for trademark infringement against RHH.

2.   *Unfair Competition Under 15 U.S.C. § 1125 (Count II)*

Hildawn's second claim asserts that RHH's use of its trademarks "constitutes an act of unfair competition in violation of 15 U.S.C. § 1125." (*Id.* ¶ 41.) RHH "falsely led the public to believe that the source and origin of the trademarks is that of the [d]efendant's and not of the [p]laintiff." (*Id.* ¶ 42.)

"[A] person engages in unfair competition if he or she, 'on or in connection with any goods or services, . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or

misleading representation of fact' in a manner that is 'likely to cause confusion[.]'" *Bird*, 289 F.3d at 877 (citing 15 U.S.C 1125(a)(1)(A)). Like with trademark infringement, the "key question" in unfair competition cases under the Lanham Act is "whether the defendant's actions create a likelihood of confusion as to the origin of the parties' goods or services." *Id.* (citing *Daddy's Junky Music Stores, Inc.*, 109 F.3d at 280; *Champions Golf Club, Inc. v. The Champions Golf Club, Inc.*, 78 F.3d 1111, 1116, 1123 (6th Cir. 1996)).

Based on RHH's admissions, the Court finds that Hildawn has shown RHH engaged in willful unfair competition through unauthorized use of Hildawn's trademark in RHH's business activities with consumers. As stated *supra*, RHH's infringing use is likely to cause confusion in the marketplace and thus meets the test for liability under the Lanham Act. The Court therefore holds that Hildawn is entitled to default judgement with respect to its Lanham Act claim for unfair competition against RHH.

### 3. Ohio Trademark Infringement (Count III)

Hildawn's third claim is for Ohio trademark infringement in violation of both Ohio Rev. Code § 1329.66 and Ohio common law for RHH's use of each of the four registered trademarks at issue. (Doc. No. 11 ¶¶ 47–50.) Hildawn further asserts that RHH's infringement was willful. (*Id.* ¶ 51.)

The statutory basis for Count III cannot be maintained based on the pleaded facts. Hildawn's cited statute is limited to owners of a mark "registered under the sections 1329.54 to 1329.67 of the Revised Code[.]" Ohio Rev. Code § 1329.66. Those sections detail the procedure for registering a trademark with the Ohio Secretary of State. *See id.* §§ 1329.54, 1329.55, 1329.56, 1329.57, 1329.61. That means that for a mark to be "registered under the sections 1329.54 to

1329.67," it must be specifically registered with the applicable state agency. Nothing in any of the relevant sections recognize a federal trademark registration as a valid substitute for registration with the Ohio Secretary of State. It necessarily follows that a federal registration alone is insufficient to confer on a plaintiff the protections of § 1329.66. Only an Ohio registration will do.

Although Hildawn's marks are federally registered, nothing in the pleadings suggests they were also registered in Ohio. Hildawn cannot, therefore, sustain its cause of action based on § 1329.66. *See DeGidio v. West Grp. Corp.*, 191 F. Supp. 2d 904, 909 (N.D. Ohio 2002) ("In order to sustain his cause of action in Count II, Plaintiff must own a *registered* trademark, *see* Ohio Rev. Code Ann. § 1329.66, and Plaintiff has not fulfilled this requirement." (emphasis in original)), *aff'd,* 355 F.3d 506 (6th Cir. 2004).

Even with that pleading deficiency, the common law basis for Count III remains viable because § 1329.66 "do[es] not adversely affect the rights or the enforcement of rights in trademarks or service marks acquired in good faith at common law[.]" Ohio Rev. Code § 1329.67. Rather, the trademark statutes "merely implement the common-law rights and create certain procedural advantages." *Countywide Heating & Cooling, Inc. v. Horton*, 456 N.E.2d 827, 828 (Ohio Ct. App. 1982) (quoting *Younker v. Nationwide Mut. Ins. Co.*, 191 N.E.2d 145 (Ohio 1963)). "The qualified property rights in such names and marks and the right to protection thereof arise as a matter of common law, not as a matter of statute." *Id.*

Turning to the common law basis for Hildawn's claim, the Court notes that the Sixth Circuit and Ohio courts make clear that "trademark claims under Ohio law follow the same analysis as those under the Lanham Act[.]" *ETW Corp. v. Jireh Pub., Inc.*, 332 F.3d 915, 920 (6th Cir. 2003); *see Bedford Auto Dealers Ass'n. v. Mercedes Benz. of N. Olmsted*, No. 97080, 2012

14

WL 760626, at *3 (Ohio Ct. App. Mar. 8, 2012) ("[C]laims for common-law trademark infringement under Ohio law . . . are subject to the same standards as their federal counterparts under the Lanham Act."). As the amended complaint states a claim for willful trademark infringement under the Lanham act, Hildawn necessarily states a claim for common law trademark infringement in connection to RHH's willful and unlawful trademark use. The Court therefore holds that Hildawn is entitled to default judgement with respect to Count III for common law trademark infringement.

### 4.   *Ohio Unfair Competition (Count IV)*

Hildawn's claim for unfair competition under Ohio law asserts that "[d]efendant's use of [p]laintiff's trademarks . . . constitutes an act of unfair competition in violation of [Ohio Rev. Code] § 1345.02." (Doc. No. 11 ¶ 58.) RHH's use of the trademarks "falsely led the public to believe that the source and origin of the respective trademarks is that of the [d]efendant's and not of the [p]laintiff." (*Id.* ¶ 59.) Its motion for default judgment, however, cites a different statute. (Doc. No. 21, at 8.) The motion seeks a judgment that RHH is liable for unfair competition under Ohio Rev. Code § 4165.02. (*Id.*)

Hildawn, as the master of its complaint, may choose which causes of actions to plead and which statutes it wishes to invoke. *See Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 943 (6th Cir. 1994). Although the decision to grant a default judgment is within the Court's discretion, *AF Holdings LLC v. Bossard*, 976 F. Supp. 2d 927, 929 (W.D. Mich. 2013) (citations omitted), the Court is also bound by the rule requiring that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). In accordance with Rule 54(c), the Court must rely on the pleadings as stated in the complaint for which a plaintiff

requests a default judgment. *See, e.g.*, *Firestone Fin., LLC v. H & N Express, LLC*, No. 2:24-cv-12686, 2025 WL 2052995, at *1–2 (E.D. Mich. July 22, 2025); *Ford Motor Co.*, 441 F. Supp. 2d at 848; *J & J Sports Prods., Inc*, 2008 WL 5083149, at *1. "Facts not established by the pleadings, or claims which are not well-pleaded, are not binding and cannot support a judgment." *Kelley v. Carr*, 567 F. Supp. 831, 840 (W.D. Mich. 1983) (citations omitted).

Here, Hildawn moves for relief under Ohio Rev. Code § 4165.02 for unfair competition. Hildawn did not, however, plead a claim under § 4165.02 in its amended complaint, and thus did not place RHH on notice that it may be held liable under that statute. *Cf. Ayers v. Receivables Performance Mgmt., L.L.C.*, No. 2:15-cv-12082, 2016 WL 5402962, at *9 (E.D. Mich. Sept. 28, 2016) (noting that Rule 54(c) allows a defendant to review the relief requested in a complaint and on that basis "decide that a default judgment may be preferable to fighting the lawsuit"). The amended complaint instead invokes as Count IV § 1345.02 of the Ohio Consumer Sales Practices Act ("OCSPA"). Because Hildawn did not specifically plead an Ohio unfair competition claim under § 4165.02, that claim is not well pleaded, and this Court cannot grant default judgment on that claim.[3]

Even if Hildawn were to move for default judgment on the pleaded OCSPA claim, that too would fail. The amended complaint fails to state a claim as to Count IV due to two defects.

The first defect is that Hildawn is not a "consumer" who can sue for relief under § 1345.02. The OCSPA defines a "consumer" as "a person who engages in a *consumer transaction* with a

---

[3] Even so, the practical impact on Hildawn is likely negligible. Hildawn successfully pleads a deceptive trade practices claim under the same statute in Count VI. The law for both claims is essentially the same. *Lavanty v. Nicolinni's*, 55 N.E.3d 565, 571 (Ohio Ct. App. 2015). Moreover, the options for monetary and injunctive relief under the statute are identical for both claims. *See* Ohio Rev. Code § 4165.03.

supplier." Ohio Rev. Code § 1345.01(D) (emphasis added). A "person" may be a business entity, *id.* § 1345.01(B), while a "supplier" is "a seller, lessor, franchisor, or other person engaged in the business of effecting or soliciting consumer transactions[,]" *id.* § 1345.01(C). A consumer suing under the OCSPA must have engaged in a "consumer transaction"—defined as "a sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, a franchise, or an intangible, to an individual for purposes that are primarily personal, family, or household, or solicitation to supply any of these things." *Id.* § 1345.01(A). If a person does not engage in a consumer transaction, then they may not recover under the OCSPA. *Dawson v. Blockbuster, Inc.*, No. 86451, 2006 WL 1061769, at \*3 (Ohio Ct. App. Mar. 16, 2006).

Here, none of the factual allegations show that Hildawn ever engaged in a consumer transaction. Hildawn instead centers its claim on RHH's use of its trademarks in procuring sales with Ohio consumers, and the resulting injury to Hildawn's intellectual property rights. But Hildawn does not allege that it ever purchased anything from RHH or was solicited by RHH to make any purchase. Hildawn did not engage in any of the apparel purchases for which it claims consumer deception arose. Without "a transfer from a supplier to purchaser," Hildawn cannot show it engaged in a consumer transaction as required by the act. *See Riley v. Supervalu Holdings, Inc.*, No. C-040668, 2005 WL 3557395, at \*4 (Ohio Ct. App. Dec. 30, 2005). It is thus not a consumer protected by the OCSPA and cannot sue under the act. *Dawson*, 2006 WL 1061769, at \*3; *see also Hamilton v. Ball*, 7 N.E.3d 1241, 1260 (Ohio Ct. App. 2014) (holding that OCSPA claim could not be brought by plaintiff minor child because he was not a "consumer" and did not engage with defendant to transact the vehicle at issue in complaint).

17

The second defect is that Hildawn cannot claim it was "deceived" within the meaning of the OCSPA. The OCSPA prohibits suppliers from committing "unfair or deceptive act[s] or practice[s] in connection with a consumer transaction." *Id.* § 1345.02(A). "In general, the [O]CSPA defines 'unfair or deceptive consumer sales practices' as those that mislead consumers about the nature of the product they are receiving[.]" *Johnson v. Microsoft Corp.*, 834 N.E.2d 791, 800 (Ohio 2005). But "a plaintiff who could not have been deceived by . . . a supplier's conduct cannot prevail on an OCSPA claim." *Ferron v. EchoStar Satellite, LLC*, 410 F. App'x 903, 908 (6th Cir. 2010) (internal quotations and citation omitted).

Hildawn does not, and indeed cannot, claim it was deceived by RHH's use of the trademarks. As the owner of the registered trademarks, Hildawn knew RHH's appropriated marks were being unlawfully used. There is no possibility Hildawn could have been confused or mislead as to the origin, association, or any other basis from RHH's merchandise bearing the infringing marks. With no actual deception, Hildawn is not entitled to recover under the OCSPA. *Cicero v. Am. Satellite, Inc.*, No. 10AP-638, 2011 WL 4477247, at \*3–6. (Ohio Ct. App. Sept. 27, 2011) (holding that plaintiff could not claim to have been deceived by supplier emails and thus could not sue under OCSPA because "he was aware of what could potentially be a deceptive consumer sales practice prior to ever having received any of the emails that [were] the subject of th[e] lawsuit").

Hildawn improperly moves for judgment on a claim it did not plead in the amended complaint. And the face of the amended complaint fails to state a claim for Count IV. The Court declines to grant Hildawn default judgment as to Count IV.

5. *False Designation of Origin Under 15 U.S.C. § 1125(a) (Count V)*

Hildawn's claim for false designation of origin under 15 U.S.C. § 1125(a) avers that RHH's conduct in relation to Hildawn's trademarks "constitutes use of false designation of origin, or false representations; wrongfully and falsely designating [d]efendant's products as originating from or otherwise being connected with [p]laintiff's products[.]" (Doc. No. 11 ¶ 64.) RHH used false descriptions in interstate conduct and did so in a way that was "likely to confuse, mislead, or deceive purchasers or potential purchasers[.]" (*Id.*) "By using [Hildawn]'s trademarks, [RHH] has falsely led the public to believe that the source and origin of the trademarks is that of [RHH.]" (*Id.* ¶ 65.)

"The Lanham Act imposes liability on '[a]ny person who, on or in connection with any goods or services . . . uses in commerce . . . any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . is likely to cause confusion, or to cause mistake, or to deceive . . . as to the origin . . . of his or her goods, services, or commercial activities." *Johnson v. Jones*, 149 F.3d 494, 502 (6th Cir. 1998) (citing 15 U.S.C. § 1125(a)(1)(A)). "A Lanham Act claim for false designation of origin must contain two elements: (1) the false designation must have a substantial economic effect on interstate commerce; and (2) the false designation must create a likelihood of confusion." *Id.* (citing *Lyan v. Quality Cts. United, Inc.*, 249 F.2d 790, 795 (6th Cir. 1957)).

"False designation is simply a species of unfair competition" and Lanham Act claims for false designation and unfair competition "are one and the same." *Champions Golf Club*, 78 F.3d at 1122–23 (citation modified) (disapproving of district court's "treat[ment of] the false designation claim as if it were a distinct claim from the unfair competition claim"). "Although the

19

jurisdictional interstate commerce element is necessary,[4] likelihood of confusion is the crux of a false designation claim. *Cf. Dorchen/Martin Assocs., Inc. v. Brook of Cheboygan, Inc.*, 838 F. Supp. 2d 607, 613 (E.D. Mich. 2012) ("[L]ikelihood of confusion is the essence of an unfair competition claim."). The likelihood of confusion test is the same for claims under both §§ 1125(a) and 1114. *Champions Golf Club*, 78 F.3d at 1123. Accordingly, for the same reasons the Court held that Hildawn is entitled to default judgment on its trademark infringement and unfair competition claims, the Court concludes that Hildawn should be granted default judgment for its false designation claim against RHH. *Cf. Ford Motor Co. Heritage Mgmt. Grp., Inc.*, 911 F. Sup. 2d 616, 629 (E.D. Tenn. 2012) (holding that the same rationale that warranted granting plaintiff summary judgment as to trademark infringement also warranted granting it summary judgment for false designation of origin).

  6.  *Ohio Deceptive Trade Practices Under Ohio Rev. Code § 4165.02 (Count VI)*

Hildawn's final claim is for deceptive trade practices under the Ohio Deceptive Trade Practice Act, Ohio Rev. Code § 4165.02. (Doc. No. 11 ¶ 70.) Hildawn asserts that RHH's use of the trademarks violated state law "by falsely leading the public to believe that the source and origin of the trademarks is that of [d]efendant and not [p]laintiff," thereby causing Hildawn to suffer damages. (*Id.* ¶¶ 70–71.)

The Ohio Deceptive Trade Practices Act "prohibits persons from engaging in conduct that 'causes likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services' or that 'causes likelihood of confusion or misunderstandings as

---

[4] There is clearly interstate commerce here. RHH is based in Maryland and solicited business in Ohio with products bearing Hildawn's trademarks.

to affiliation, connection, or association with, or certification by, another.'" *Noco Co. v. Mac Calabur Invs., LLC*, No. 1:21-cv-2173, 2022 WL 2176540, at *4 (N.D. Ohio June 16, 2022) (quoting Ohio Rev. Code §§ 4165.02(A)(2) & (A)(3)). "[C]laims for . . . violations of the Ohio Deceptive Trade Practices Act are subject to the same standards as their federal counterparts under the Lanham Act." *Bedford Auto Dealers Ass'n.*, 2012 WL 760626, at *3 (citation omitted); *accord Victoria's Secret Stores v. Artco Equip. Co., Inc.*, 194 F. Supp. 2d 704, 724 n.8 (S.D. Ohio 2002). Indeed, state courts have recognized that "trademark infringement is closely related to unfair competition and deceptive trade practice" and that "[t]he law regarding all of these options is essentially the same, and Ohio relies on federal and state law equally in this area." *Lavanty*, 55 N.E.3d at 571 (citing *Blankenship v. CFMOTO Powersports, Inc.*, 944 N.E.2d 769 (Ohio Ct. Com. Pl. 2011)).

The Court, for the same reasons it ruled for Hildawn on Counts I–III and V, finds that Hildawn has established a claim as to the cause of action in Count VI of its amended complaint. *See Mac Calabur Invs.*, 2022 WL 2176540, at *4. Accordingly, Hildawn is entitled to default judgment on its claim against RHH under the Ohio Deceptive Trade Practices Act for RHH's willful acts of infringement.

### C. Remedies in Default Judgment

Hildawn's motion requests several forms of relief: a preliminary and permanent injunction against RHH, an order that there be an accounting to determine damages, an award of disgorgement of profits from the infringement, an award of costs and attorney's fees, and an award of damages available under 15 U.S.C. § 1117. (Doc. No. 21, at 11–12.) The Court considers each in turn.

21

### 1. *Preliminary and Permanent Injunctions*

The amended complaint requests that "a preliminary and, ultimately, a permanent injunction be entered pursuant to 15 U.S.C. § 1114 enjoining [d]efendant from infringing upon [p]laintiff's trademark including but not limited to prohibiting any other use of [p]laintiff's trademark used in clothing apparel and hats." (Doc. No. 11, at 12.) Hildawn further requests that RHH "be required to deliver for destruction all labels, signs, prints, packages, tags, wrappers, receptacles, and advertising material in their possession bearing the trademark[.]" (*Id.*)

"The standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that [for a preliminary injunction] the plaintiff must show a likelihood of success on the merits rather than actual success." *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 546 n.12, 107 S. Ct. 1396, 94 L. Ed. 2d 542 (1987) (citation omitted). Because the Court has determined the actual success of Hildawn's pleaded claims, it will simply award a permanent injunction of an appropriate scope.

"An evidentiary hearing is not required prior to issuing a permanent injunction in the case of a default judgment because there are no factual issues in dispute." *Summit Tool Co. v. Xinkong USA, Inc.*, No. 5:20-cv-1182, 2021 WL 3190780, at *7 (N.D. Ohio July 28, 2021) (citations omitted). Here, the Court concludes that no hearing is necessary.

The Lanham Act provides for injunctive relief. *Microsoft Corp. v. McGee*, 490 F. Supp. 2d 874, 882 (S.D. Ohio 2007) (citing 15 U.S.C. §§ 1116(a) and 1125(c)(2)).[5] A plaintiff seeking a

---

[5] Similarly, the Ohio Deceptive Trade Practices Act and Ohio common law on trademarks provide for injunctive relief. Ohio Rev. Code § 4165.03; *see Corrova v. Tatman*, 844 N.E.2d 366, 369 (Ohio Ct. App. 2005) ("The standard of proof necessary to prevail in an action for injunctive relief is a showing of likelihood of confusion." (internal quotations and citations omitted)).

permanent injunction must satisfy a four-factor test to be entitled to that relief. *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391, 126 S. Ct. 1837, 164 L. Ed. 2d 641 (2006). Those factors are: (1) plaintiff has suffered an irreparable injury; (2) remedies at law are inadequate to compensate for that injury; (3) considering the balance of hardship between the plaintiff and the defendant, a remedy in equity is warranted; and (4) the public interest would not be disserved by a permanent injunction. *See id.*

As to the first factor, "no particular finding of likelihood of entry or irreparable harm is necessary for injunctive relief in trademark infringement or unfair competition cases." *Microsoft Corp.*, 490 F. Supp. 2d at 882 (citations omitted). Indeed, "irreparable injury ordinarily follows when a likelihood of confusion or possible risk to reputation appears from infringement[,]" as is the case for Hildawn. *Circuit City Stores, Inc. v. CarMax, Inc.*, 165 F.3d 1047, 1056 (6th Cir. 1999) (citing *Wynn Oil Co. v. Am. Way Serv. Corp.*, 943 F.2d 595, 608 (6th Cir. 1991)) (internal quotation marks and further citation omitted). The first factor unquestionably favors imposition of an injunction against RHH.

For the second factor, "where there is potential for future harm from infringement, there is no adequate remedy at law." *Microsoft Corp.*, 490 F. Supp. 2d at 882 (citation omitted). And "where, as here, the defendant defaults, a court may infer that the defendant is willing to or may continue its infringement." *Kelly Toys Holdings, LLC v. alialialiLL Store*, 606 F. Supp. 3d 32, 52–53 (S.D.N.Y. 2022) (citation modified). This Court infers from RHH's default that it will continue to infringe on Hildawn's four trademarks in the future. Therefore, no adequate remedy at law exists for the ongoing and future harms. The second factor favors an injunction.

As to the third factor, RHH faces no significant hardship, while Hildawn faces a substantial one. "[T]here is no harm to the [d]efendant inasmuch as an injunction will merely require [d]efendant to comply with the . . . Lanham Act" and Ohio law. *See Microsoft Corp.*, 490 F. Supp. 2d at 883 (citation omitted); *see also Audi AG v. D'Amato*, 469 F.3d 534, 550 (6th Cir. 2006) (noting that defendant "faces no hardship in refraining from willful trademark infringement"). Hildawn, meanwhile, faces a hardship from loss of sales from RHH siphoning away consumers by using Hildawn's own trademarks. *See Audi AG*, 469 F.3d at 550. Hildawn also faces potential loss of goodwill from RHH's unauthorized use of its marks. *See Am. Auto Ass'n v. Dickerson*, 995 F. Supp. 2d 753, 758 (E.D. Mich. 2014).

For the fourth factor, "it is in the public interest to enforce federal trademark laws and to prevent consumers from being misled and confused by defendant's [infringement.]" *Summit Tool Co.*, 2021 WL 3190780, at *7. An injunction here would "prevent[] consumer confusion and deception in the marketplace and protect[] the trademark holder's property interest in the mark." *Microsoft Corp.*, 490 F. Supp. 2d at 883 (citing *Lorillard Tobacco Co. v. Amouri's Grand Foods, Inc.*, 453 F.3d 377, 383 (6th Cir. 2006)). There being no disservice to the public via an injunction, the Court concludes that this factor also strongly favors granting Hildawn's requested injunction.

All four factors strongly favor Hildawn's requested relief. The Court will therefore grant a permanent injunction, pursuant to 15 U.S.C. §§ 1116 & 1118, enjoining RHH from engaging in further infringement and ordering RHH to deliver for destruction all infringing apparel and other physical material.

## 2. *Damages*

Hildawn lists several requests for damages in its amended complaint. It first requests that it be awarded compensatory damages. (Doc. No. 11, at 12.) It further requests award of "a disgorgement of the profits of the infringement pursuant to 15 U.S.C. § 1114 [.]" (*Id.*) Finally, Hildawn requests damages it is entitled to under 15 U.S.C. § 1117. (*Id.*) This includes a request for an accounting to determine its exact damages as well as RHH's profits attributable to its unlawful infringement. (*Id.*)

This Court has significant discretion under § 1117 to fashion an appropriate award for damages incurred from trademark infringement. *See La Quita Corp. v. Heartland Prop. LLC*, 603 F.3d 327, 342 (6th Cir. 2010) (citing *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1191 (6th Cir. 1997) (further citations omitted). The Court may, subject to the principles of equity, award a defendant's profits from the infringing activity and any damages sustained by plaintiff. *La Bamba Licensing, LLC v. La Bamba Authentic Mexican Cuisine, Inc.*, 75 F.4th 607, 610 (6th Cir. 2023).

Hildawn, having proved that RHH infringed upon its trademark rights willfully, is entitled to an accounting to determine the amount of monetary relief it may recover under § 1117, including whether it is appropriate to award RHH' profits and the full extent of Hildawn's damages. Accordingly, the Court will order an accounting to determine RHH's profits attributable to its infringement. Hildawn will have sixty (60) days from the date of this Order to submit a proposed schedule and evidentiary proffer for determining monetary relief. The Court shall schedule a hearing regarding damages when appropriate.

### 3. *Costs and Attorney's Fees*

Hildawn's amended complaint requests as relief that it "be awarded costs associated with this action" and that RHH be held "liable for all attorney's fees and costs incurred hereinafter pursuant to 15 U.S.C. § 1117(a)." (Doc. No. 11, at 12.) The Lanham Act provides for awards of costs of the action to a prevailing plaintiff. 15 U.S.C. § 1117(a). It also provides for reasonable attorney fees to the prevailing party in exceptional cases. *Microsoft Corp.*, F. Supp. 2d at 883 (citing 15 U.S.C. § 1117(a)). An exceptional case occurs when the trademark infringement is willful. *Id.* (citing *Ford Motor Co.*, 441 F. Supp. 3d at 854) (further citations omitted).[6]

Due to the willful nature of RHH's infringements, Hildawn is entitled to recover costs and attorney's fees under the Lanham Act. Thirty (30) days following the determination of damages, Hildawn may submit a properly supported motion for costs and attorney's fees .

## III.  CONCLUSION

The Court ultimately finds that RHH has unlawfully and willfully infringed on the following registered trademarks owned by Hildawn: Reg. Nos. 5,192,792 ("GIRLDAD"), 3,644,619 ("GIRLMOM"), 5,397,597 ("BOYDAD"), and 3,347,486 ("BOYMOM"). Accordingly, Hildawn is entitled to a default judgment in its favor for the counts in the amended complaint that state a valid claim along with a permanent injunction against RHH. Hildawn is further entitled to monetary relief, costs, and attorney's fees, for which it may submit evidence supporting each such award.

For the foregoing reasons, the Court **GRANTS in part** and **DENIES in part** Hildawn's

---

[6] The Ohio Deceptive Trade Practices Act also allows awards of "reasonable attorney's fees to the prevailing party" where the Court "finds that the defendant has willfully engaged in a [deceptive] trade practice[.]" Ohio Rev. Code § 4165.03(B); *Cesare v. Work*, 520 N.E.2d 586, 591 (Ohio Ct. App. 1987).

motion for default judgment (Doc. No. 21) as follows:

1. The Court GRANTS Hildawn's motion for default judgment as to the following counts: Count I for trademark infringement in violation of 15 U.S.C. § 1114, Count II for unfair competition in violation of 15 U.S.C. § 1125, Count III for Ohio common law trademark infringement, Count V for false designation of origin in violation of 15 U.S.C. § 1125(a), and Count VI for deceptive trade practices in violation of the Ohio Deceptive Trade Practices Act, Ohio Rev. Code § 4165.02.

2. The Court **DENIES** Hildawn's motion for default judgment as to Count IV for unfair competition under the Ohio Consumer Sales Practices Act, Ohio Rev. Code § 1345.02.

3. Defendant RHH and its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it who receive actual notice of this Order, are hereby **PERMANENTLY ENJOIND** and **RESTRAINED** from:

   a. Using in commerce the trademarks with U.S. Reg. Nos. 5,192,792 ("GIRLDAD"), 3,644,619 ("GIRLMOM"), 5,397,597 ("BOYDAD"), and 3,347,486 ("BOYMOM"), or any colorable imitation or confusingly similar designation, in connection with the manufacture, advertising, offering for sale, sale, distribution, or promotion of any goods or services;

   b. Committing any acts calculated to cause consumers to believe RHH's goods or services are sponsored by, approved by, affiliated with, or otherwise connected to Hildawn;

   c. Assisting, aiding, or abetting any other person or entity in engaging in or performing any of the activities referred to in subparagraphs (a)-(b) above.

27

4.  RHH is hereby **ORDERED** to, at its own cost, deliver to Hildawn for destruction all labels, signs, prints, packages, tags, wrappers, receptacles, and advertising material bearing any of the registered trademarks listed in 3(a) above, pursuant to 15 U.S.C. § 1118, and to do so within sixth (60) days of being served with a copy of this Order,.

5.  It is **ORDERED** that an accounting be conducted to determine RHH's profits attributable to the infringing conduct.

6.  Hildawn is **ORDERED** to submit, within sixty (60) days of this Order, a proposed schedule and evidentiary proffer for determination of monetary relief. RHH may respond to Hildawn's submission within twenty-one (21) days after Hildawn submits that filing.

7.  Hildawn is awarded reasonable attorneys and costs to be determined.

**IT IS SO ORDERED**.

Dated: June 18, 2026

**HONORABLE SARA LIOI**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**